UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
ST. LOUIS DIVISION

UNITED STATES OF AMERICA,                  CASE NO.   4:24-cr-00249-JMD

Plaintiff,

v.

ALEXANDER GARDINER,

 Defendant.

_____/

### SENTENCING MEMORANDUM

Through counsel, the Defendant, ALEXANDER GARDINER ("Gardiner")
files the following Sentencing Memorandum setting forth all factors that the Court
should consider in determining what type and length of sentence is sufficient, but not
greater than necessary, to comply with the statutory directive set forth in 18 U.S.C. §
3553(a).

### Sentencing under *Booker*

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding
in Blakely v. Washington, 124 S. Ct. 2531 (2004) and Apprendi v. New Jersey, 530  U.S.
466 (2000) applies to the Federal Sentencing Guidelines.  United States v. Booker, 125 S.
Ct. 738, 756 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court

found "no relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the Federal Sentencing Guidelines" in the cases before the Court. Id. at 751. Accordingly, reaffirming its holding in Apprendi, the Court concluded that:

[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. Id. At 756.

Based on this conclusion, the Court further found those provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. § 3553(b)(1) or which rely upon the Guidelines' mandatory nature, 18 U.S.C. § 3742(e), incompatible with its Sixth Amendment holding. Booker, 125 S. Ct. at 756. Accordingly, the Court severed and excised those provisions, "make[ing] the Guidelines effectively advisory." Id. at 757.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by Booker,

requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a).

Booker, 125 S. Ct. at 757. Thus, under Booker, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

1) "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1));

2) "the kinds of sentences available" (§ 3553(a)(3));

3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (§ 3553(a)(6)); and

4) "the need to provide restitution to any victims of the offense." (§ 3553(a)(7)).

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation" (emphasis added).

Under U.S.C. § 3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of the defendant which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. *See* U.S.S.G. § 5H1.

In sum, in every case, a sentencing court must now consider all of the § 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in § 3553(a), these statutory sentencing factors should generally trump the guidelines. See United States v. Denardi, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J., concurring in part, dissenting in part) (arguing that since § 3553(a) requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

**Application of the Statutory Sentencing Factors
to the Facts of this Case**

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

1.    **The Nature and Circumstances of the Offense and the History and Characteristics of the Offender**

**(a) Nature and Circumstances of Offense**

On November 5th, 2025, Gardiner pled guilty to a one-count Indictment charging Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b). Specifically, Gardiner knowingly attempted or persuaded, induced, enticed, or coerced. R.L., a minor to engage in sexually explicit conduct for the purpose of producing a video image of such sexually explicit conduct involving R.L. and transmitting such visual image to Alexander Gardiner.  A review of Gardiner's iCloud account by law enforcement found evidence of communications with the victim and other individuals as well as numerous instances of sexually explicit videos and pictures of teenage boys.  A detailed narrative of the offense conduct is found in the Pre-Sentence Investigation Report.

While recognizing the seriousness of Mr. Gardiner's conduct, it is important to note that he never engaged in any form of physical sexual conduct or physical violence with any victim. In fact, at no point is it alleged that Gardiner ever sought to meet any victim in person or engage in any in-person interaction whatsoever.

Gardiner was arrested on August 8th, 2024, by CBP when entering the United States at Miami International Airport and appeared for Initial Appearance in the Southern District of Florida. Gardiner did not contest extradition and was subsequently transferred to the Eastern District of Missouri. Gardiner never actively fought the case against him and entered a guilty plea without undue delay.

**(b) History and Characteristics of Gardiner**

Alexander Gardiner is 25 year-old dual citizen of The United States and The Turks and Caicos. He was born in Miami, Florida and moved to the Turks and Caicos when he was a few months old, where he was raised through his teenage years. He was raised mostly by his grandmother, as his parents divorced when he was nine years old. Gardiner is single, has no children and has never been able to maintain any form of long-term romantic relationship. Mr. Gardiner has never been arrested or convicted of any crimes prior to the present charge.

As reported in the Pre-Sentence Investigation Report, Mr. Gardiner was sexually abused from age seven through ten by a family friend. He describes the abuse as "hands on." Gardiner has difficulty discussing the abuse and becomes emotional when he tries to elaborate and describe the abuse. This abuse went unreported through his youth. As a result, Gardiner never received any treatment as a child or adult, in connection with the abuse he suffered.

Mr. Gardiner was also exposed to pornography at this young age, both through his abuser, and through other childhood figures who also introduced him to drugs and alcohol at an early age.

At age 19, Mr. Gardiner tried to take his own life by ingesting a large number of pills.

A defendant's personal history and psychological development are central considerations in federal sentencing. Congress has directed courts to impose sentences that are "sufficient, but not greater than necessary" to achieve the purposes of sentencing under 18 U.S.C. § 3553(a), and courts are able to consider a defendant's traumatic background in evaluating moral culpability and the need for treatment-oriented sentencing. Decades of psychological research has established that severe childhood trauma can profoundly shape an individual's emotional development, impulse control, and behavioral patterns.

A substantial body of psychological and criminological research has documented the profound developmental impact that childhood sexual abuse can have on later emotional regulation, interpersonal functioning, and sexual development. Where abuse occurs during formative years—such as between the ages of seven and ten—the trauma may distort a child's understanding of boundaries, intimacy, and power, leaving lasting psychological effects that can manifest in maladaptive behavior later in life.

Studies examining incarcerated or supervised sexual offenders have likewise found meaningful associations between childhood victimization and later offending behavior. In one study of 147 sexual offenders, researchers identified a statistically significant relationship between a history of childhood sexual abuse and later offenses against children, lending empirical support to the "cycle of abuse" hypothesis. Coxe, R., & Holmes, W. (2002). *A Study of the Cycle of Abuse Among Child Molesters*. Journal of Child Sexual Abuse, 10(4), 111–118. https://doi.org/10.1300/J070v10n04_a

Early sexual victimization may influence later offending through mechanisms such as trauma-related coping deficits, distorted sexual scripts, and learned behavioral

patterns. Consistent with social learning theory, children who experience sexual abuse may internalize inappropriate sexual conduct as part of their developmental environment, particularly when the abuse occurs repeatedly or at a young age. Scholars have theorized that early abuse can "imprint" developmental patterns affecting later sexual behavior and interpersonal relationships, especially when the abuse involves coercion, secrecy, or power imbalances. *Victims Becoming Offenders: A Study of Ambiguities* (From The Sexually Abused Male: Prevalence, Impact, and Treatment, V 1, P 153-175, 1990, Mic Hunter, ed. -- See NCJ-128859).

While the academic literature emphasizes that childhood sexual abuse is not a deterministic cause of later offending, as the majority of survivors never commit sexual offenses. Protective factors, such as stable social support, treatment, and positive adult relationships can interrupt the victim-offender pathway. However, the research consistently demonstrates that early sexual trauma can significantly alter psychological development and increase the risk of later maladaptive or criminal behavior. Within the context of sentencing, such evidence provides critical insight into the defendant's developmental history and the psychological forces that may have contributed to the offense conduct, while also underscoring the importance of treatment-oriented interventions aimed at breaking the cycle of abuse. Unfortunately, Mr. Gardiner never received sexual assault survivor treatment and lacked stable social support and proper positive adult relationships. He reports that he also turned to alcohol and marijuana as a coping mechanism and even attempted suicide.

The Supreme Court has repeatedly emphasized that a sentencing court must consider evidence relating to a defendant's background and personal history, including childhood abuse and neglect. In Eddings v. Oklahoma, 455 U.S. 104 (1982), the Court vacated a death sentence because the trial court refused to consider evidence of the defendant's abusive childhood and emotional disturbance. The Court explained that the

Eighth and Fourteenth Amendments require the sentencer to consider "any aspect of a defendant's character or record" offered as a basis for a sentence less severe than the maximum.  In that case, the defendant had presented evidence that he was raised in a violent and unstable household and suffered serious emotional disturbance; the Court held that such evidence must be weighed in mitigation during sentencing.

When viewed through the lens of modern sentencing principles, evidence of severe childhood sexual abuse is highly relevant to the court's assessment of the defendant's culpability and the appropriate sentence. While such trauma does not excuse Gardiner's criminal conduct, it provides context for understanding how his developmental environment shaped his psychological functioning and decision-making.

In Gardiner's case, the "hands on" sexual abuse he suffered during early childhood represents precisely the type of developmental trauma that courts have long considered mitigating. The evidence demonstrates that the defendant's formative years were marked by victimization and psychological harm at a time when he lacked the capacity to understand or process the abuse.

Alexander Gardiner's history does not diminish the seriousness of the offense, but it does provide powerful mitigation bearing on the defendant's moral culpability and the type of sentence most likely to promote rehabilitation and reduce future risk. A sentencing approach in line with the recommendations in The Plea Agreement that incorporates treatment, lifetime supervision, and trauma-informed intervention is therefore consistent with the sentencing principles articulated by the Supreme Court under 18 U.S.C. § 3553(a).

2.      **Sentencing Range and Sentencing Options**

Pursuant to the Presentence Investigation Report, with a total offense level of 42 and a criminal history category of I, Gardiner's guideline imprisonment range is 360 months to life.  There is also a 10-year minimum term of imprisonment.  This results in

practical sentencing range of 10 years to life.  The Government and Defense have entered into a plea agreement where they have agreed to a joint recommended sentence of 144 months followed by lifetime supervision.

3. **The Need to Avoid Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct**

There are no codefendants in this case.  It is also difficult to identify cases with very similar facts.   It is even more difficult to identify cases that follow similar fact patterns and similar § 3553(a) sentencing factors.  Undersigned's past experience and a cursory review of cases with similar charges yields a variety of sentences along the entire range of legal sentences.

Any sentencing disparities in similar can be attributed to the unique nature of each Defendant's § 3553(a) sentencing factors.  As such, we feel that a sentence of 144 months followed by lifetime supervision would not create an unwarranted sentence disparity considering the facts and sentencing factor analysis surrounding Mr. Gardiner's case.

4. **The Need to Provide Restitution to Any Victims of the Offense**

Pursuant to the Plea Agreement, Mr. Gardiner has agreed to pay any restitution if restitution is either requested by the Government on behalf of the victims or ordered by the Court.   Gardiner's ability to pay restitution is largely contingent on his eventual release to supervision, enabling him to seek gainful employment.

### Conclusion

Pursuant United States v. Denardi, 892 F.2d 269, 276-77 (3d Cir. 1989), where the guidelines conflict with other sentencing factors set forth in 18 U.S.C. § 3553(a), these statutory sentencing factors should generally trump the guidelines.  In the instant case, the § 3553(a) factors, specifically his age and history of abuse and personal trauma, weigh in favor of a sentence below the guidelines and in accordance with the recommendations of

The Government and Defense. Specifically, we believe a sentence of 144 months of imprisonment followed by lifetime supervision is appropriate in this matter.  This both satisfies the 120-month statutory minimum mandatory sentence and is in line with the § 3553(a) factors.

Respectfully submitted,

CARLOS M. FLEITES, P.A.

407 Lincoln Road Suite 12-E
Miami Beach, FL 33139
Tel: 305.672.8434
FBN: 370850
Email: CMFleites@mylawyr.com

By: /s/: Carlos M. Fleites
      Carlos M. Fleites, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing instrument was filed through Pacer/ECF on March 12th, 2026.

By:/s/: Carlos M Fleites
      Carlos M. Fleites, Esq.